# THE STATE v. LAFAYETTE SHOUSE, Appellant.

### Division Two, May 31, 1916.

1. **MOTION FOR NEW TRIAL: Place in Record: Called For But Not Set Out in Bill.** The proper place for a motion for a new trial in a criminal case is not in that part of the transcript usually designated as the record proper, but in the bill of exceptions. But when there is set out in the bill a recital that defendant excepted to the action of the court in overruling his motion for a new trial and that said motion is set out at certain pages "of the transcript of the record hereto attached and made a part hereof," and said motion is found at the pages designated, the motion will be considered and reviewed on appeal.

2. **FAILURE TO SUPPORT CHILD: Evidence: Complaint.** Where the charge is that defendant had refused and neglected to provide for his minor child necessary food, clothing and lodging it is error to permit the mayor of the town to testify that complaint had been made "about defendant not providing" for said child. Such testimony is an uncalled for verbal confrontation of defendant by a mere volunteer. And especially is it error, where the witness proceeds to testify that he sent the marshal for defendant and when he was brought in he told him complaint had been made against him for not providing for his family, that it was not the first time complaint had been made, that he was tired of fooling with him and that he must support his family and provide clothing and fuel for them.

3. **———: Meaning of Statute.** The history, language and severe penalty of Sec. 4492, R. S. 1909, show that nothing more was intended by the Legislature than that the neglect or refusal by the father to furnish necessary food, clothing or lodging must be to an extent that the life of his child under sixteen years of age is endangered thereby, or its health is permanently injured or is likely to be permanently injured thereby. The words "necessary food, clothing or lodging" mean such food, clothing or lodging as is necessary to sustain life and health, and lacking which the life of the child will be endangered, or its health permanently injured or is likely to be; they do not mean that a failure to furnish one meal, or food or lodging of a given quality and kind, would be a crime.

Appeal from Lewis Circuit Court.—*Hon. Charles D. Stewart,* Judge.

REVERSED AND REMANDED.

*H. H. Howard* for appellant.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

FARIS, P. J.—Appellant appeals from a conviction in the circuit court of Lewis County on an information charging him with violating the provisions of section 4492, Revised Statutes 1909, in that, as it was alleged, he feloniously, unlawfully, wilfully and without lawful excuse refused and neglected to provide necessary food, clothing and lodging for his infant child, Ora Shouse. His punishment was assessed by the trial jury at imprisonment in the penitentiary for a period of two years.

The substantive facts of the offense as they appeared upon the trial disclose that defendant lived with his wife and five children, among whom was the child Ora, in a two-room house in the town of Canton in Lewis County. Defendant was a buyer and seller of second-hand metals and similar articles, commonly and in the vernacular called "junk." The oldest child of defendant was the girl Ora, for whom he is charged with having failed and refused to provide. She was at the time complained of some twelve or thirteen years of age.

In January, 1915, the alleged condition of the child Ora was called to the attention of the mayor and marshal of the town of Canton, both of whom thereupon went to the home of appellant. They found in the house of appellant the little girl Ora seriously ill of pneumonia. She was in bed clothed in ragged, dirty clothing, consisting of a cotton dress, a thin cotton gauze shirt and drawers. Both this clothing and the child's body were, the witnesses say, unspeakably filthy, as were the bed and bed clothing upon which she lay ill. The record does not disclose whether she had other clothing or not. The con-

dition of defendant's house and of the surroundings are shown by the evidence to have been seemingly unsanitary and filthy, uncared for and ill-smelling in the extreme. The defendant, his wife and his four other children were in this house at the time of the visit there of the mayor and marshal. The record discloses that defendant, who throughout claimed to have no money or other means, had prior to this, with the aid of a friend who paid for the service, called a physician to examine and treat the child Ora. The record clearly discloses that this child was greatly in need of medical treatment, attention and nursing. She was removed from the house of defendant and cared for at the expense of the town of Canton at the home of a neighbor for some four weeks, until she recovered. The medical treatment apparently necessitated and which was furnished by the town of Canton called for some twenty-seven visits or more by a physician.

Prior to the finding of the little girl ill under the circumstances set forth above, she had been seen, as the testimony discloses, about the streets of Canton with old shoes upon her feet and dressed in ragged, thin cotton clothing, seemingly insufficient to protect her from the cold.

There was no testimony as to the charge of neglecting to provide on defendant's part necessary food, beyond the fact that the State showed that defendant was in the habit of purchasing large quantities of stale bread from the bakeries in the town of Canton, and there was some faint proof of his admission that he ate this himself and furnished it to his family, though on his part the evidence shows that he purchased it for the purpose of feeding it to his chickens, of which he seems to have had a number.

The defense was a lack of financial ability on the part of defendant to furnish to his family and to the child Ora in particular, better food or better clothing, lodging and medical attendance than he had furnished

her. Defendant claimed that he had at the time this prosecution was commenced, only the sum of seventeen cents.

There was proof that in September, 1912, considerably more than two years before this prosecution was commenced, defendant had been paid $475 by the sheriff of the county, which money came from the estate of defendant's father. There was countervailing proof that defendant had lost this money in an unfortunate venture in his business as a junk dealer.

There was some proof furnished by one Hart, a witness in the case, that in October or November preceding this prosecution, which occurred in March, defendant had showed the witness certain checks which defendant said were his and amounted in the aggregate to the sum of $800. There was no showing what became of this money, if it ever existed; though defendant offered some forty or more checks for various sums which he had paid out to divers persons from March, 1914, to about the 1st of February, 1915. These checks, defendant averred, were given to grocers and others in payment for food and clothing for his family and some of the checks upon their face corroborated defendant's statement.

The condition of the record is such that we cannot, under our rules of review here, consider the instructions in the case; nor alleged matters occurring upon the *voir dire* examination of the jurors; nor the alleged misconduct of the jury while considering their verdict; nor the alleged acts of witnesses in disobeying the orders of the court; for these matters are not properly preserved.

Some further statement of the facts will be found in the subjoined opinion set forth in such wise, we hope, as to make clear some of the things we find it necessary to discuss.

I. The State contends that defendant has not brought up in a manner meet for review the evidence

and other matters depending upon exceptions taken upon the trial. The record before us was not prepared pursuant to well-settled canons of practice. The motion for a new trial is found copied in full at pages 10 to 26, both inclusive, of the transcript in what we have come to designate for convenience, the "record proper." Of course *this is not the proper place for it.* It does not physically appear at all in the bill of exceptions, *which is the proper place for it.* But there does appear in the bill of exceptions this entry:

Motion for New Trial: Place in Record.

"Defendant duly excepted and excepts to the action of the court in overruling and refusing defendant's motion for a new trial and in overruling and refusing defendant's prayer and motion for a new trial, which said motion for a new trial and the affidavits supporting said motion are set forth in the transcript of the record herewith filed and attached hereto and are fully set forth on pages 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26 of the transcript of the record hereto attached and made a part hereof."

While the method pursued by defendant in making up his bill of exceptions is inartificial and is neither to be commended nor followed as a precedent, yet the motion for a new trial does appear upon the record before us in such wise as to advise us fully as to its contents, and so as to guard against any fraud possible to be worked by a change therein, and so as to show when the bill of exceptions was signed by the judge below he had before him and ready to his hand a true copy thereof. There is pointed out to us here unerringly the place wherein, under all necessary safeguards as to verity, we may find this motion for a new trial. In effect we are told that while this motion is not set out in the bill of exceptions, it is set out at another place —the correct pages of which place are given—and out of caution it is stated by defendant in his bill of exceptions that such entry and said motion as set out are

"made a part hereof," i. e., a part of the bill of exceptions.

The condition here is, we think, readily to be distinguished from the facts presented in the cases of State v. Price, 186 Mo. 1. c. 143; State v. Tooker, 188 Mo. 1. c. 445; State v. Modlin, 197 Mo. 1. c. 379; State v. Herron, 199 Mo. 159; and State v. Rhodes, 220 Mo. 1. c. 11, to which our attention is directed by learned counsel for the State and on which the State relies.

Since the defendant, though omitting to bodily and physically set out or direct the clerk to so set out this motion for a new trial, has yet in his bill of exceptions so clearly and correctly pointed out to us the place where this motion has been copied by the clerk into another part of the record, it would be a narrow and crabbed view of what is at best but a technicality, to say that this motion is not before us. The analogy of this view to that taken by us in civil cases, wherein the abstract contains a reference to other parts of the record for an entry due to be found at the place of the reference, will be readily seen. We think it fairly follows that the contention of the State that for lack of a motion for a new trial we may not consider the bill of exceptions herein, should be overruled, the which we do.

II. Coming thereupon to the merits of the appeal, we note that it is urged as error, among thirty-four other assignments, that the court *nisi* allowed the State to show that complaints were made by divers persons to one Millspaugh, the mayor of the town (who may well be called the prosecuting witness in the case), touching the alleged condition of the child, Ora. Illustrating the nature of this alleged error the witness Millspaugh was asked:

"Q. Frank, coming down to the part of the issues, I will ask you to state whether or not any complaint was made to you about this defendant not providing for his child, Ora Shouse?

"By Mr. Howard: I object; whatever complaints that might have been made by somebody else couldn't bind this defendant.

"By the Court: Overruled.

"And to the action of the court in overruling said objection, the defendant then and at the time excepted and saved his exceptions.

"A. Complaint was made to me.

"Q. What did you do? A. I sent the marshal down for Mr. Shouse, and he brought him up to the bank and I told Mr. Shouse that complaint had been made against him for not providing for his family and that inasmuch as this wasn't the first time that complaint had been made, and it had been made repeatedly, that I was tired of fooling with him any further along that line, and that he must support his family, and he must provide clothing, food and fuel for them.

"Q. Did he do it? A. He refused to.

"Q. Following that visit, or in that visit what did Shouse say? A. He said he had done all he could and he couldn't do anything more.

"Q. Now then, did you ever have another talk with Mr. Shouse? A. I did.

"Q. When was that? A. That was on Tuesday; on the following Friday complaint was made to me that his little child was bad sick.

"By Mr. Howard: I object for the reasons stated heretofore.

"By the Court: Overruled.

"And to the action of the court in overruling said objection, the defendant then and at the time duly excepted and saved his exceptions."

We think the admission of this testimony constituted reversible error. Against defendant's contention of error, the State urges that the question was merely a sort of preliminary one, proper in the premises for that it showed a reason for the subsequent actions of the witness Millspaugh, and that nothing but the fact of a bare

complaint having been made to the witness was elicited
or called for by the question asked. We are unable
to agree to this view. Here the charge was that de-
fendant had "refused and neglected to provide for said
Ora necessary food, clothing and lodging." The ques-
tion complained of is "whether or not any complaint
was made *about this defendant not providing for his
child Ora Shouse.*" The answer was: "Complaint was
made to me. . . . I sent the marshal down for Mr.
Shouse . . . and I told Mr. Shouse that complaint
had been made against him for not providing for his
family and as this wasn't the first time that complaint
had been made—it had been made repeatedly—that I
was tired of fooling with him; . . . that he must
support his family and must provide clothing and fuel
for them." We quote this answer loosely (subject to
the correction of the quoted text) so as to show the fear-
ful force of the witness's answers against defendant's
chances before the jury.

Conceding that the objection made by defendant
was not as full as it might have been and that he made
no objection to a most damaging part of this witness's
answers, yet defendant properly objected that com-
plaints made by others could not bind him. The last
part of the witness Millspaugh's statement contained
many things which made it vicious and damaging and
utterly inadmissible, and while no objection was made
to some of these things specifically, their connection with
the first question asked ought to have made their vice
apparent to the learned court *nisi.* It is an uncalled
for verbal confrontation of defendant by a mere volun-
teer; it brings into the case other acts and complaints
of acts of defendant not embraced within the period
of the charge here; it almost in terms expresses the wit-
ness's settled opinion and conviction of defendant's
guilt and conveys the idea that his escape from prose-
cution up to that time had been but an act of the wit-
ness's grace. It is broader than the charge of the in-

formation and even of the statute itself, for that the witness peremptorily requires and demands that defendant furnish clothing, food and *fuel* for the *whole family;* whereas his dereliction is by the information charged to be in respect to the infant Ora only; besides the statute does not, in terms at least, refer to fuel, or to members of a family, other than infants under the age of sixteen years. For the error first above noted this case must be reversed and remanded.

In passing we may observe that the testimony took a wide range. While the charge specifically was that defendant refused and neglected to provide for the child Ora necessary food, clothing and lodging, the proof only tended to show a neglect to furnish the best of food and clean clothing and aromatic and clean lodging. The point which was stressed, and plainly the gravamen of the charge which the State sought to prove, was the alleged neglect to furnish proper medical attention, medicines, nursing and sanitary surroundings to the infant Ora while she was ill of pneumonia. The proof showed that this child had the same sort of food and lodging that defendant had. Defendant had not deserted or abandoned her. A physician had been called by defendant to treat her before the ultimatum of the witness Millspaugh had been delivered to defendant. He was doing, he says, the best for her that his abilities permitted. Nor is his contention upon the latter point convincingly disputed.

Elsewhere in the record it appears that the mayor, who was the chief witness in the case, caused the arrest and prosecution of defendant because he had not brought to the mayor the sum of fifteen dollars, which the latter told defendant he must deposit with the witness for the care of Ora or be prosecuted for this felony. In substance this witness says: "I told defendant it would be necessary for him to provide at least fifteen dollars so we could give the child care and medical attention. I told him to bring this money to me, and

gave him till one o'clock to get it; this was at half past ten o'clock. I cannot say whether he had this money or not; I think he did have it; it was not my business where he got it; I told him I thought he could get it. I do not know where he could have gotten it; he could not have borrowed it from me. I just made the peremptory demand on him to produce fifteen dollars by one o'clock and told him if he did not I would have him arrested. I waited till about two o'clock and had him arrested.''

While this excerpt is taken from the cross-examination of the witness Millspaugh, he had theretofore (without objection) testified in chief for the State substantially to the same facts. We are of the opinion that this mode of eliciting testimony to make out this charge discloses a complete misapprehension of the language and meaning of the statute under which defendant was prosecuted. This statute, so far as it is pertinent to the charge against the defendant at bar, reads substantially thus: If any father of any infant child under the age of sixteen years, born in lawful wedlock, shall, without lawful excuse, refuse or neglect to provide for such infant necessary food, clothing or lodging, whereby his life shall be endangered, or his health shall have been, or shall be likely to be, permanently injured, such father shall be punished, etc. [Sec. 4492, R. S. 1909.]

When this section first came into the criminal code of this State (Sec. 1272, R. S. 1879), it seems to have been intended to apply to masters of apprentices and persons standing in some such relation only. It then, as first enacted, coupled the ·refusal to furnish necessary food, etc., with acts of physical assault to an extent whereby the life of the apprentice or infant was endangered, or his health was, or was likely to become permanently injured. The offense was then made a felony and the penalty then as now was severe, being

fixed at a maximum of three years' imprisonment in the penitentiary.

From the history, language and severe penalty of this statute we think nothing other could have been intended by the Legislature but that the neglect or refusal to furnish necessary food, clothing or lodging must have been to an extent whereby the life of the infant was endangered, or to an extent which permanently injured, or which was likely to permanently injure, the health of the infant. In short, the words "necessary food, clothing or lodging," mean such food, clothing or lodging as is requisite to sustain life and health, and lacking which the life of the child will be endangered, or its health permanently injured, or likely so to be.

Clearly, no mere failure to furnish one meal, or to furnish food, or lodging, or clothing of a given fineness and rarity would or ought to constitute a violation of this statute. No more would a failure to conform to an officious and arbitrary fixing of the quality of the food, or the fineness of the garments, or the aroma or sanitary condition of the residence or surroundings of the child. The statute did not contemplate that any person who might by his own good fortune or his own industry have attained opulence, should be allowed to set up in the community a standard of fineness of care and nurture to which all other persons should either conform or be punished as felons. A commendable zeal for civic betterment ought not to be permitted so to operate as to burden the State penitentiary with all but a fortunate and favored few of the State's citizens.

The burden of the evidence here in the case made is the alleged neglect to furnish medical attention, medicines, nursing, sanitary and sweet-smelling surroundings for the child Ora while she was ill, though it will be noted that the statute makes no mention in terms of any such matters, and it is almost a canon of the crim-

inal law that no man is to be held guilty of a crime by a forced construction, i. e., by construing a statute so as to bring him within its provisions, when upon the letter thereof he falls wholly without its purview.

For the errors noted this case must be reversed and remanded. If upon another trial the evidence be no stronger or more apposite to prove the offense charged, in the light of what we herein rule, the court should instruct the jury to acquit the defendant. Let the case be reversed and remanded. All concur.